**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRENN GONZALEZ, on behalf of himself and those similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE COCA-COLA COMPANY, | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiff Darrenn Gonzalez, by his undersigned attorneys, brings this class action complaint against The Coca-Cola Company ("Coca-Cola"). Plaintiff's allegations are based upon personal knowledge as to his own acts and upon information and belief as to all other matters.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), in that this is a class action in which there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

2.     Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Plaintiff Darrenn Gonzalez, a citizen of California, purchased Simply Orange brand orange juice from a retail store in this District, and Defendant Coca-Cola distributed, advertised and Simply Orange, which is the subject of the present complaint, in this District.

## NATURE OF THE ACTION

3.     This class action lawsuit asserts that a leading producer and marketer of branded fruit juices, The Coca-Cola Company ("Coca-Cola") has been falsely claiming that its heavily processed, designed and modified Simply Orange brand orange juice ("Simply Orange") is "100% Pure Squeezed Orange Juice" and "a pure, natural orange juice with a taste that's the next best thing to fresh-squeezed." Despite Coca-Cola's "100% Pure Squeezed Orange Juice" claim, Simply Orange is heavily processed and flavored – it is not 100% pure or natural.

4.     Mass marketed orange juice such as Coca-Cola's cannot be fresh squeezed as fresh squeezed orange juice is unstable and has a short shelf-life. Mingua Jia, Q. Zhang, H., Min, D. *Pulsed Electric Field Processing Effects on Flavor Compounds and Microorganisms of Orange Juice*, 65 Food Chemistry 445-51 (1999). Industrial processing and storage improves shelf-life, but adversely affects the flavor, aroma, and nutritional qualities of orange juice. Jordan, M. J., Goodner, K. L., Laencina, J. *Deaeration and Pasteurization Effects on the Orange Juice Aromatic Fraction*, 36 Lebensm-Wiss. U. Technol. 391-96 (2003).

5.      Nonetheless, to extend shelf-life, Coca-Cola's Simply Orange undergoes extensive processing which includes the addition of aromas and flavors.  This extensive processing changes the essential nature of Simply Orange.  It is not "pure, natural orange juice."  It is instead a product that is scientifically engineered in laboratories, not nature, which explains its shelf-life of more than two months.

6.      Coca-Cola is well aware that consumers want and demand natural products, and it seeks to take advantage of that consumer preference by deceptively promoting and marketing Simply Orange as "pure" and "natural" orange juice even though it has been pasteurized, deaerated, stripped of its flavor and aroma, stored for long periods of time before it ever reaches consumers, and then flavored, before it is packaged directly into the bottle. Some of the non-natural aspects of these processes include:

a.      the removal of naturally present air from the intercellular spaces of the juice through the deaeration process;

b.       the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;

c.      long term storage of deaerated and pasteurized juices for a year or longer;

d.      the addition of chemically engineered "flavor packs" to mimic the flavor that natural orange juice has, which because it is natural, requires no flavor pack; and

e.      the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up the varietal and geographic differences.

7.      Coca-Cola makes no mention of its use of or reliance upon added flavorings and aroma or the extent to which its processing alters the essential nature of Simply Orange.  Coca-Cola instead markets Simply Orange deceptively by stating simply that it is not reconstituted from concentrate and that it is "gently pasteurized."

8.      Through Coca-Cola's deception, consumers are left with the false belief that Simply Orange is akin to fresh squeezed orange juice.  Coca-Cola's Simply Orange is not fresh orange juice and its taste is a result of added flavoring not "gentle" processing as Coca-Cola suggests in its marketing materials and advertisements.

9.      Due in part to their false belief of the purity and freshness of Simply Orange, consumers are willing to pay a premium price.

CLASS ACTION COMPLAINT                                                   2

10.     Additionally, Coca-Cola's ability to extract a premium for Simply Orange would not be possible without the flavoring provided by the flavor pack.

11.     Coca-Cola falsely claims in its advertisements that it does not add flavoring to Simply Orange.

12.     Coca-Cola uses blending and flavor packs to maintain uniform quality of Simply Orange so that regardless of the season, consumers purchase a uniform product with a uniform taste that would be impossible with a fresh squeezed natural orange juice.

13.     Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Coca-Cola's Simply Orange labeled and marketed as being "100% Pure Squeezed Orange Juice" ("the Class") at any time from March 2008 to the present (the "Class Period") for unjust enrichment, breach of express warranty, violation of the consumer fraud laws of the various states including California Consumer Legal Remedies Act ("CLRA"), Civil Code §§1750, *et seq.*, California Unfair Competition Law, Bus. & Prof. Code §§17200 *et seq.*, and California False Advertising Law, Bus. & Prof. Code §17500 *et seq.*

## THE PARTIES

14.     Plaintiff Darrenn Gonzalez is a citizen of California, residing in Vacaville, California.  Gonzalez purchased Coca-Cola's Simply Orange, which was represented as being "100% Pure Squeezed Orange Juice," from retail stores in and around Vacaville, California. Plaintiff purchased Simply Orange for personal, family, or household purposes throughout the Class Period.  Plaintiff saw and read Coca-Cola's misrepresentations that Simply Orange is "100% Pure Squeezed Orange Juice," and relied on such misrepresentations in deciding to purchase Simply Orange.  Plaintiff would not have purchased Simply Orange had he known it was extensively processed and flavored.

15.     Defendant The Coca-Cola Company is a Delaware corporation with its principal place of business located at One Coca-Cola Plaza NW, Atlanta, Georgia 30313.  Defendant manufactures, markets, and sells Simply Orange nationwide.

## FACTS COMMON TO ALL CLAIMS

**Simply Orange Is Not Pure, Fresh or Natural**

16.     The Simply Orange label prominently features in large type "100% Pure Squeezed Orange Juice" and "a pure, natural orange juice with a taste that's the next best thing to fresh-squeezed."

17.     Coca-Cola's Simply Orange is not 100% pure and natural orange juice, but rather is both extensively processed and flavored.

18.     Without a source of information other than Coca-Cola and the Simply Orange label itself, consumers are left knowing very little about the actual contents of a carton of Simply Orange because of the gap that Coca Cola creates between the reality of its heavily processed Simply Orange product and Coca Cola's marketing rhetoric.

19.     Coca-Cola understands that consumer perceptions of foods and in particular, natural foods, affect purchasing decisions and consumption.

20.     The term "natural" carries overtones of purity and health.

21.     For more than a quarter century, surveys have shown that consumers prefer to buy natural foods whenever possible and that they believe that natural foods taste better than other foods.

22.     Similarly, surveys have long shown that a majority of consumers expect that a "100% natural" food is healthier for you and would be more expensive.

23.     Consumers do not consider processed foods as nourishing or as fresh as unprocessed foods.   Consumers deliberately avoid foods and beverages containing preservatives, added flavoring, added colors, and other chemical additives.

24.     Consumers consider safety, taste and purity more important than price when shopping for food and beverages, and will therefore pay a premium for pure and natural products.

25.     Consumers' favorable views of natural beverages influence their behavior and – importantly for Coca-Cola – purchasing decisions.

26.     Coca-Cola understands the importance and value of descriptors and labels with the words "fresh," "natural" and "pure" to consumers when considering whether to buy foods and beverages.

27.     Coca-Cola also realizes that consumers are increasingly aware of the relationship between health and diet and that consumers are demanding fresh and natural products that are minimally processed.

28.     Coca-Cola recognizes the growing interest in premium quality juices, with very mild pasteurization, distributed refrigerated and with a limited shelf-life.

29.     Growth of Simply Orange sales has been fueled by consumer perception that Simply Orange is a more natural and premium product than reconstituted orange juice made from concentrate.

30.     Throughout Coca-Cola's marketing materials, advertising, website, labeling, packaging and point-of-sale materials, Coca-Cola represents that Simply Orange contains no flavoring, is "unfooled around with," and natural.

31.     Coca-Cola also maintains a website for the promotion of Simply Orange where Coca-Cola makes the following representations:[1]

**Plant Tour**
Welcome to the simply orange tour.  This is our plant (orange tree), these are our workers (oranges on tree), this is upper management (picture focuses on sun).  ***But what you won't find around here is any freezing, flavoring or concentrating.  Which brings us to our end product: Simply Orange.  Honestly simple.***  (Emphasis added)

**Secret Recipe/February 13, 2012**
Serene, picture of orange grove, sound of birds chirping.
So, how exactly does SO always taste so fresh and delicious?  Well, we're prepared to share our secret recipe. Grab a pen.  Ready?  ***We start with oranges and then we add---nothing! Shocking, I know.  Simply Orange. Honestly simple.*** (Emphasis added)

**No Version 2.0**
No flashy upgrades. . . ***You started unfooled around with.  And that's just the way you are going to stay. Not new, not improved. So perfect. Simply Orange.  Honestly simple.*** (Emphasis added)

---

[1]   Available at http://simplyorangejuice.com/?WT.srch=1 (last accessed March 19, 2012).

**Instructions**
***Do not sweeten, do not concentrate.  Do not disturb.  Nature at work.  Simply Orange.  Honestly simple.***  (Emphasis added)

32.     Along with emphasizing that Simply Orange is natural, Coca-Cola repeatedly touts its simplicity, freshness, and purity.

33.     While Coca-Cola claims that Simply Orange is "Honestly Simple," pure, and natural, Simply Orange is far more complex and scientific.

34.     Coca-Cola's Simply Orange is not "simply" orange juice, but rather is an extensively processed and flavored beverage.

35.     Coca-Cola unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively marketing Simply Orange.

**Simply Orange Is Extracted At Massive Processing Plants**

36.     During the Class Period, Coca-Cola included juice extracted from various types of sweet oranges that were processed at massive orange juice processing plants in Florida and Brazil. These orange juice processing plants utilize Brown International or FMC juice extraction systems or other similar juice extraction equipment, which are controlled by computers in an essentially automated process.

37.     Brown International Corporation systems recovers orange juice by reaming.  The reamers and cups are mounted in a vertical plane.  The reamer heads are attached to turning shafts on the two faces of a revolving cylindrical drum.  A feed wheel transfers oranges past a knife, which halves each fruit.  A cup then delivers the orange halves to the reamers, the juice is collected beneath the reamers, and the reamed half-peels are ejected from the cups by a device called a kicker, which fits into a slot in the cups.  There are two product streams recovered at the juice extractor: the pulpy juice and the peel residue.  These streams are recovered beneath the extractor lines for further processing.  The extracted juice stream goes to a primary finisher with a larger-hole screen size to separate the pulpy juice from the membranes, rags, and seeds.  The pulpy juice stream goes to another finisher with a smaller screen to effect separation of the juice and pulp.

38.     FMC extractors operate on the principle of instantaneous separation by squeezing the juice from the fruit.  The extractors are arranged in linear rows.  The upper and lower cups start to converge upon an orange held by the extractor.  The upper and lower cups cut two holes in the fruit and continue converging until the peel is separated from the fruit.  Peeled fruit is then squeezed into a strainer tube, which separates juice from seeds and the rest of the fruit.

39.     Since the fruit must be peeled carefully before the juice is extracted to eliminate peel oil in the juice, which is not commercially possible at the massive facilities where Coca-Cola's Simply Orange is extracted, the usual industrial practice is to remove excess oil during a separate de-oiling step.

**Simply Orange Is De-Oiled**

40.     Coca-Cola endeavors to maximize juice yield from its oranges.  Consequently, the juice ends up with too much peel oil.

41.     Because peel oil can reduce the quality of Simply Orange, Coca-Cola removes excess peel oil by vacuum stripping or de-oiling centrifuges.

42.     Coca-Cola, however, removes more oil than may otherwise be necessary so that it can add back its desired flavoring and standardize the Simply Orange taste.

**Simply Orange Undergoes Deaeration**

43.     "Air is naturally present in the intercellular spaces of fruits.  During fruit maceration, homogenization, and juice extraction cells are crushed, the cell wall is disrupted and air is mixed into the juice.  Air can be present as dissolved gas in solution or associated with the pulp particles, for example, in orange juice.  During cell disruption, metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and biochemical reactions.  Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value.  *These reactions are exacerbated by the increase in temperature during pasteurization* and reduce the overall quality of the product during storage."  R. Garcia-Torres, N.R. Ponagandla, R.L. Rouseff, R.M. Goodrich-Schneider & J.I. Reyes-De-Corcuera, *Effects of*

1  *Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Rev. in Food Sci. &

2  Food Safety 409 (2009) (emphasis added).

3       44.     Because oxygen reduces the quality of stored orange juice, Coca-Cola subjects its

4  juice to a deaeration process that removes dissolved oxygen from the juice.

5       45.     Coca-Cola deliberately fails to mention that after being squeezed from oranges, its

6  Simply Orange undergoes deaeration, which strips the juice of oxygen, so it does not oxidize.

7       46.     Flash or vacuum deaeration is the most common method of deaeration in the citrus

8  industry.  This method of deaeration "performs the dual role of removing oxygen and removing

9  excess peel oil from orange juice before pasteurization.  This operation is called 'flash deaeration'

10  because of the sudden decrease in pressure that preheated juice undergoes as it enters the deaeration

11  tank, producing a practically instantaneous separation." *Effects of Dissolved Oxygen*, 8

12  Comprehensive Rev. in Food Sci. & Food Safety 417 (2009).

13      47.     Importantly, when orange juice is stripped of oxygen it is also stripped of important

14  volatile compounds that provide flavor and aroma.

15      48.     To ensure a high elimination of dissolved oxygen, Coca-Cola preheats Simply

16  Orange before deaeration.  Heating orange juice further alters its flavor and reduces its aromatic

17  quality.

18  **Simply Orange Is Pasteurized and Stored For Up To One Year**

19      49.     Coca-Cola's Simply Orange is also pasteurized to improve its shelf-life, but the

20  improved shelf life comes at the expense of the delicate flavor and aromatic quality of the juice.

21      50.     Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates

22  enzyme and microbial activity in orange juice to extend its shelf-life, but also further reduces aroma

23  and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

24      51.     Pasteurization profoundly effects aroma composition and can create off-flavors or

25  their precursors from Maillard, Strecker, and acid-catalyzed hydration reactions.

26      52.     Heating causes irreversible damage to the flavor of orange juice.

27

28

53.     Numerous tests have revealed the effect of pasteurization on the aromatic composition of orange juice and the decrease in the amounts of important flavor and aroma compounds like acetaldehyde, ethyl butyrate, and hexanal.  Finally, aroma and flavor volatiles are further altered by storage.   In fact, increased storage time leads to a decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste, and increases off-flavors and off-odors.

54.     Coca-Cola advertises that Simply Orange is "not from concentrate, freshly squeezed, and gently pasteurized," again pushing the freshness of the product, yet failing to disclose to consumers that its product may be made from orange juice that has been pasteurized and, with precise nitrogen blanketing and mixing, stored for a year or more at a temperature of 30 degrees in multi-million gallon tanks at a tank farm.  It has been reported that tanks have been used for over 4 years without being cleaned or re-sterilized.  This extended stopover between "grove and glass" is never mentioned in Coca-Cola's advertising.

55.     "There has been no technological breakthrough or identification of flavor constituents that would enable thermally pasteurized juice or reconstituted concentrate to taste exactly like fresh juice….It may be simply stated that heating irreversibly and negatively alters juice flavor, so that it no longer has the aroma and character of fresh juice."  Dan Kimball, Mickey E. Parish & Robert Braddock, *Oranges and Tangerines*, Processing Fruits, Science and Technology 630 (Diane M. Barret et al. eds., 2d ed., 2004).

56.     These are not sophisticated scientific tenets and Coca-Cola understands that: pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles altering the original flavor of the fresh orange juice; and increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

57.     Pasteurization is neither the only, nor necessarily the most altering step of Coca-Cola's production of Simply Orange.

58.     Prior to storage in the aseptic tanks Simply Orange is often heated again and is regularly heated once more before it goes into the package.

59.     Coca-Cola knows that the more Simply Orange is heated the more its flavor is depleted.

**Simply Orange Is Processed with Flavor Packs**

60.     Freshly squeezed orange juice smells and tastes fresh naturally.  However, after the volatiles are stripped away from the orange juice and it is processed, the remaining product is essentially an insipid, sugary, orange liquid that lacks the flavor and aroma of orange juice.

61.     Orange volatile flavor components can be separated into one of two broad categories. The first is the oil-soluble constituents in peel oil and in juice oil.  The other flavor components consist of the water-soluble constituents present in the juice.

62.     The majority of the characteristic flavor of fresh squeezed orange juice comes from the water-soluble components found in the juice sacs.   These components are lost during processing, deaeration, pasteurization, and long term storage.

63.     Without the addition of flavoring and aroma, Simply Orange would not only be unappealing to consumers, but would also be nearly undrinkable.

64.     To revive this liquid to a saleable product, and unbeknownst to reasonable consumers, Coca-Cola re-flavors the product to taste like natural orange juice through the addition of flavor packs.

65.     Flavor packs are unnatural and are scientifically produced and designed in laboratories by chemists, food scientists and flavorists.

66.     The process of creating an objective flavor by blending various natural and/or synthetic aromatic materials is called formulation.  Relying on olfaction and years of training and education, flavorists and perfumers select and blend numerous aromatic compounds for Coca-Cola in conformity with Coca-Cola's needs and product concepts to develop flavoring so that Simply Orange will have a flavor that includes three different building blocks:

   a.  Top Note – the top note of flavors is composed of aroma components that volatilize rapidly and have lower flavor retention.  Top note defines the first impression of the flavor.

b.  Middle Note – the middle note of flavors consists of aroma components that subsequently volatilize and have moderate flavor retention, and also forms the main body of the flavor.

c.  Base Note – the base note is a class of residual aroma components that volatilize very slowly and can linger for long periods of time.  The base note contributes to determine aroma properties of the flavor.

67.  During pasteurization and deaeration, the components that compose the top note and middle note are lost from Simply Orange.  Coca-Cola understands that for Simply Orange to have a refreshing and juicy character, it needs to have a strong top note.

68.  Flavorists and flavor packs, not the grower in the grove or the fruit itself, give Simply Orange its distinctive taste.  Thus, the distinctive taste of Simply Orange is a product of science (*i.e.*, flavor packs), not the fruit.

69.  The main purposes of the flavor packs are: to provide and intensify aromas and flavors; to supply flavors and aromas that are lost during processing; to suppress or mask undesired flavors that are created during processing and long-term storage; and also to enhance consumer acceptance.

70.  Flavorists process orange oils into various types of flavor materials with different levels of notes, flavor intensity, stability, and functionality, which enable Simply Orange to maintain its characteristic flavor 365 days a year.

71.  Flavorists use microbiological and enzymatic processes to convert limonene and other peel oil compounds into other, more valuable flavor compounds because of consumers' preference for "natural" flavors.

72.  Since both microbial and enzymatic bioconversions are natural processes, Coca-Cola and its flavorists view the resulting products from the bioconversion of orange peel oil components into more valuable flavor compounds as natural.

73.  Reasonable consumers would not view orange juice containing flavor compounds derived from microbial or enzymatic bioconversion as "100% Pure Squeezed" or natural.

74.     Similarly, flavor components can be obtained by removing terpene hydrocarbons from the recovery essence oil by distillation or extraction. This process is also not natural.

75.     Flavorists specially design flavor packs that include water-soluble liquid flavors or emulsified flavors to satisfy Coca-Cola's specific needs and requirements.

76.     Emulsified flavors are obtained by adding water and emulsifiers and stabilizers to a flavor base, followed by homogenization.  Emulsified flavors do not dissolve, but disperse.  To ensure their dispersion state for a long time, the specific gravity of the emulsified flavors is adjusted to a value comparable to Simply Orange.

77.     Flavorists design the flavor packs to emphasize and highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in varying mixtures.  The aroma and flavoring added to Simply Orange bears little resemblance to the natural orange oil and essence that leaves the juice during deaeration or that is altered during pasteurization or storage because of flavor interactions that occur during flavoring.

78.     Coca-Cola also uses flavor packs to improve the flavor and aroma of lower quality juice.

79.     Coca-Cola's distinctive taste is the product of a recipe created by scientists and flavorists and not a product of nature.

80.     While no single volatile can be considered a character impact compound, it is generally accepted that fresh orange flavor and aroma are the result of a collection of aroma active volatiles present in low concentrations and it is fairly well accepted that total aldehydes and esters play an important role in orange juice flavor.

81.     Aldehydes are found at high concentration in fresh orange juice.  Aldehydes, however, are so chemically reactive that their concentrations are altered by thermal processing.

82.     For example, studies have shown that acetaldehyde is reduced by thermal processing. Acetaldehyde is the major volatile aldehyde present in orange juice and studies have also shown that it is a major contributor to the fresh, pungent odor quality of freshly squeezed orange juice.

83.     Similarly, esters are another group of chemical compounds that provide important flavor and aroma components for freshly squeezed orange juice.  Total ester concentration has also been suggested as a measure of orange aqueous essence strength and quality.

84.     Ethyl butyrate, also known as ethyl butanoate, is one of the most intense odorants in orange juice and it is fairly well accepted that it is the single most important ester in orange juice.

85.     Coca-Cola adds high concentrations of specific chemical compounds to highlight the "candy" flavor of Coca-Cola's Simply Orange.

86.     Coca-Cola adds ethyl butyrate to Simply Orange because it provides the "freshest" characteristics to Simply Orange.  The addition of ethyl butyrate, which is water-soluble, dilutes the Simply Orange.

87.     Hydrocarbons are another chemical compound whose concentration is low in freshly squeezed orange juice, but vastly greater in Coca-Cola's highly processed Simply Orange.

88.     The simple addition of orange peel oil to Simply Orange would not create Coca-Cola Simply Orange's distinctive flavor or mask the effects of the juice's extensive processing because more than 90% of the peel oil consists of terpene hydrocarbons, mainly limonene, but terpene hydrocarbons provide very limited flavor and aroma in orange juice.

89.     For example, limonene, the most prevalent terpene hydrocarbon, has little, if any, direct flavor or aroma impact because of its high odor thresholds.

90.     Moreover, while limonene is a major constituent in processed orange juice, including Simply Orange, its concentration in freshly squeezed orange juice is much lower because of the elevated levels of peel oil that are introduced into the juice during commercial juice extraction.

91.     The mixture of volatile compounds with aroma activity is responsible for the characteristic aroma of orange juice.

92.     Coca-Cola adds aroma and flavoring to Simply Orange – the addition of which serves a technical function – to provide its processed orange juice an aromatic and flavor profile closer to fresh juice and to mask the effects of processing and storage.  The resulting product does not taste like fresh squeezed orange juice, but rather tastes like Simply Orange.

93.     Regardless of the time of year, Simply Orange tastes the same even though it is made from different varieties and different blends of oranges that ripen at different times of the year because Coca-Cola uses added flavoring to maintain product consistency to address variations in the quality, variety, source, and ratios of oranges used (e.g., Valencia, Hamlin or Pera).

94.     Coca-Cola adds back a greater volume of volatile compounds and/or better quality volatile compounds to Simply Orange to: restore flavoring lost by the deleterious effects of processing and long-term storage; create Simply Orange's signature flavor; and ensure consistent taste and quality.

95.     Coca-Cola fails to mention the use of flavor packs or that it is the addition of flavor packs to Simply Orange that makes it taste "fresh" and masks the effects of processing and storage.

96.     Coca-Cola claims falsely that Simply Orange is not flavored and deliberately omits any reference to Coca-Cola's use of or reliance upon flavor packs that are designed by flavorists, not grown in an orange grove.

97.     Coca-Cola does not disclose to consumers on its labeling or mention in its advertising that Simply Orange is dependent upon and enhanced by added flavoring and aroma.  In fact, Coca Cola states just the opposite.  Coca Cola expressly advertises on its website that Simply Orange is not flavored and nothing is added.

98.     Coca-Cola also claims on its website that the quality, flavor, and characteristics of Simply Orange are a result of gentle squeezing, which is a far cry from the reaming and extraction methods actually used.

99.     Reasonable consumers desirous of 100% Pure orange juice have been deceived into purchasing Simply Orange because Coca-Cola does not declare its use of flavoring.

100.     Flavor packs, which are made from processed orange oil and essence, are not "processing aids"[2] or "incidental additives" as those terms are defined by the United States Food and Drug Administration because they are added in significant levels and serve a technical function.

---

[2] The FDA defines processing aids as:
    (a) Substances that are added during the processing of a food but are removed in some manner from the good before it is packaged in its finished form;

101.    A 1993 FDA ruling confirmed that orange oil and essence do not qualify as "incidental additives" under an exemption because oils and essence are added to fruit juice for the purposes of fulfilling certain technical functions such as achieving uniform quality and organoleptic properties, and the level of use of the added ingredients is not insignificant.  58 Fed. Reg. 2850 (Jan. 6, 1993).

102.    Flavor packs should not be added to Simply Orange unless they are clearly identified on the product label.

103.    By failing to identify the inclusion of flavor packs while including descriptors such as "100% Pure," natural, "Honestly Simple", and "unfooled around with," the labeling, advertisements, and marketing materials for Simply Orange are deceptive and misleading.

**Flavor Is The Most Important Quality Criteria For Consumers**

104.    Flavor has the strongest effect on quality impressions by consumers.   Similarly, added flavorings are second only to added coloring in the disapproval they engender in consumers.

105.    Flavor, more than any other quality criteria for food or beverages, has a double meaning: it represents both substance content and physical properties.

106.    Coca-Cola understands that flavor guides consumers' purchasing decisions and their willingness to pay for a product.   Coca-Cola also understands by experience that when flavor expectations are met or exceeded, it generates repeat sales and fosters consumer loyalty.

107.    Flavor plays a central role in enhancing the value and appeal of Coca-Cola's Simply Orange.  A clear, consistent product flavor is crucial for Coca-Cola to ensure consumer satisfaction and maintain the appeal of Simply Orange.

---

(b) Substances that are added to a food during processing, are converted to constituents normally present in the food, and do not significantly increase the amount of constituents naturally found in the food; or
(c) Substances that are added to a food for their technical or functional effect in the processing but are present in the finished food at insignificant levels and do not have a technical function effect in that food.
Available at http://www.fsis.usda.gov/pdf/determination_of_processing_aids.pdf (last visited March 19, 2012)

**Coca-Cola's Misrepresentations That Simply Orange Is "100 Pure Squeezed Orange Juice"**

108.    Coca-Cola leaves out the details about how Simply Orange is produced, processed, and flavored in its advertisements and on its cartons and containers.

109.    Coca-Cola has engaged in a uniform marketing and advertising program representing that Simply Orange is "100% Pure Squeezed Orange Juice," "Honestly Simple," natural and made from fresh oranges to induce consumers to purchase Simply Orange in reliance upon these representations.   These representations are prominently displayed on Simply Orange labels, and within Simply Orange advertisements, promotional materials, and website.

110.    Coca-Cola's television commercials, print advertising, and on-line marketing is false and misleading in that it implies that the juice inside the bottle is "100% Pure Squeezed" orange juice with nothing added.

111.    When Florida is not producing oranges, Coca-Cola's Simply Orange is a mixture of Florida juice, some or all of which has been stored from previous seasons, and Pera orange juice processed in Brazil and shipped to the United States.

112.    Processed not-from-concentrate orange juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels.  These orange juice tankers carry millions of gallons of orange juice cargo in cylindrical tanks.

113.    Brazil contributed as much as 20% of the juice contained in Coca-Cola Simply Orange at times during the Class Period.

114.    While Coca-Cola provides videos and images of its groves in Florida, it has never advertised or shown pictures of massive orange juice tankers that carry millions of gallons of orange juice cargo in enormous cylindrical tanks, much less revealed its dependence upon them and their cargo.

115.    Coca-Cola's representations that Simply Orange is natural and "100% Pure Squeezed Orange Juice" pertain to the composition, attributes, characteristics, nutritional value, health qualities and value of Simply Orange.   Therefore, Plaintiff and members of the Class

1  purchased products they would not have purchased or paid more than they otherwise would have

2  been willing to pay if the Simply Orange they purchased had not been mislabeled.

3  **CLASS ACTION ALLEGATIONS**

4       116.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a),

5  (b)(1), (b)(2), and (b)(3) on his own behalf and on behalf of the following plaintiff class:

6         All purchasers of Coca-Cola's Simply Orange in the United States from
       March 2008 to the present (the "Class Period").  Excluded from the Class are

7         Defendant, its parent, subsidiaries and affiliates, their directors and officers
       and members of their immediate families; also excluded are any federal, state

8         or local governmental entities, any judicial officers presiding over this action
       and the members of their immediate family and judicial staff, and any juror

9         assigned to this action.

10       117.    Plaintiff Darrenn Gonzalez also seeks to represent a class defined as all members of

11  the Class who purchased Coca-Cola's Simply Orange in California (the "California Subclass").

12       118.    Members of the Class and California Subclass are so numerous that their individual

13  joinder herein is impracticable.  On information and belief, members of the Class and California

14  Subclass number in the tens of thousands.  The precise number of Class members and their

15  identities are unknown to Plaintiff at this time but will be determined through discovery.  Class

16  members may be notified of the pendency of this action by mail and/or publication through the

17  distribution records of Coca-Cola and third party retailers and vendors.

18       119.    Common questions of law and fact exist as to all Class members and predominate

19  over questions affecting only individual Class members.  Common legal and factual questions

20  include, but are not limited to:

       a)   whether Coca-Cola was unjustly enriched by its conduct;

21

22         b)  whether Coca-Cola breached an express warranty made to Plaintiff and the
          Class;

23         c)  whether Coca-Cola advertises, or markets Simply Orange in a way that is
          false or misleading;

24         d)  whether Simply Orange failed to conform to the representations, which were
          published, disseminated and advertised to Plaintiff and the Class;

25

26         e)  whether Coca-Cola concealed from Plaintiff and the Class that Simply Orange
          did not conform to its stated representations;

27         f)  whether, by the misconduct set forth in this Complaint, Coca-Cola has
          engaged in unfair, fraudulent or unlawful business practices with respect to the

28            advertising, marketing and sales of Simply Orange;

g)   whether Coca-Cola violated the California Consumers Legal Remedies Act, California Unfair Competition Law and California False Advertising Law; and

h)   whether, as a result of Coca-Cola's misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

120.   Plaintiff's claims are typical of the claims of the members of the Class because each member of the Class was similarly affected by Coca-Cola's wrongful conduct.

121.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

122.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Coca-Cola's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Coca-Cola's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Unjust Enrichment)

123.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

124.   Plaintiff brings this Count I individually and on behalf of the members of the Class.

125.   The unjust enrichment claim can be made from common classwide proof."

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal. 2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common

scheme.).  "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

126.    Plaintiff and Class members conferred a benefit on Coca-Cola by purchasing Simply Orange.

127.    Coca-Cola has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Simply Orange.  Retention under these circumstances is unjust and inequitable because Coca-Cola misrepresented that the Simply Orange was "100% Pure Squeezed Orange Juice" when it was actually heavily processed and flavored.

128.    Plaintiff and Class members suffered a money loss as a result of Coca-Cola's unjust enrichment because: (a) they would not have purchased Simply Orange on the same terms if the true facts concerning the juice's actual composition had been known; and (b) they paid a price premium due to the mislabeling of Simply Orange.

129.    Because Coca-Cola's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Coca-Cola must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT II
### (Breach of Express Warranty)

130.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

131.    Plaintiff brings this Count II individually and on behalf of the members of the Class.

132.    Coca-Cola, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that Simply Orange was "100% Pure Squeezed Orange Juice."

133.    In fact, Simply Orange undergoes extensive processing, lengthy storage, and is dependent upon added aroma and flavoring in a makeup not found in nature.

134.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Simply Orange on the same terms if the true facts concerning the juice's actual composition had been known; and  (b) Simply Orange did not have the composition, attributes, characteristics, nutritional value, health qualities or value as promised.

<u>**COUNT III**</u>
**(Violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§1750, *et seq.*)**
**(Injunctive Relief Only)**

135.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

136.    Plaintiff brings this Count III individually and on behalf of the members of the California Subclass under California law.

137.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by representing Simply Orange as 100% pure and natural when the juice is actually heavily processed and flavored.

138.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by representing Simply Orange as 100% pure and natural when the juice is actually heavily processed and flavored.

139.    CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by representing Simply Orange as 100% pure and natural when the juice is actually heavily processed and flavored.

140.    Plaintiff and the California Subclass members suffered injuries caused by Defendant's misrepresentations because: (a) they were induced to purchase a product they would

1  not have otherwise purchased if they had known that Simply Orange was heavily processed and

2  flavored; (b) they paid a price premium due to the mislabeling of Simply Orange as "100% Pure

3  Squeezed Orange Juice."

4         141.    On March 19, 2012, prior to the filing of this Complaint, a CLRA notice letter was

5  served on Defendant Coca-Cola which complies in all respects with California Civil Code §1782(a).

6  Plaintiff Gonzalez sent Defendant a letter *via* certified mail, return receipt requested, advising Coca-

7  Cola that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the

8  goods alleged to be in violation of §1770.  Coca-Cola was further advised that in the event that the

9  relief requested has not been provided within thirty (30) days, Gonzalez will amend this Complaint

10  to include a request for monetary damages pursuant to the CLRA.  A true and correct copy of

11  Plaintiff Gonzalez's CLRA letter is attached hereto as Exhibit A.

12         142.    Wherefore, Plaintiff seeks only injunctive relief for this violation of the CLRA.

13  

**COUNT IV**
**(Violation of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)**
**(Injunctive Relief and Restitution Only)**

14

15         143.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

16  forth herein.

17         144.    Plaintiff brings this Count IV individually and on behalf of the members of the

18  California Subclass under California law.

19         145.    Defendant is subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code

20  §17200 *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include

21  unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

22  advertising . . . ."

23         146.    Throughout the Class Period, Coca-Cola committed acts of unfair competition, as

24  defined by §17200, by using false and misleading statements to promote the sale of Simply Orange,

25  as described above.

26         147.    Coca-Cola's conduct is unfair in that the harm to Plaintiff and the Class arising from

27  Coca-Cola's conduct outweighs the utility, if any, of those practices.

28

---

CLASS ACTION COMPLAINT                                                        21

148.     Coca-Cola's conduct, described herein, violated the "fraudulent" prong of the UCL by representing that Simply Orange was 100% pure and natural orange juice, when in fact is was not.

149.     Plaintiff and California Subclass members suffered lost money or property as a result of Defendant's UCL violations because: (a) Plaintiff and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition; and (b) Plaintiff and the Class were induced to pay substantially more for Simply Orange than they would have paid if its true characteristics had not be concealed or misrepresented.

150.     Pursuant to California Business & Professions Code §17203, Plaintiff and the Class are therefore entitled to: (a) an Order requiring Coca-Cola to cease the acts of unfair competition alleged herein; (b) an Order requiring corrective disclosures; (c) full restitution of all monies paid to Coca-Cola as a result of their deceptive practices; (d) interest at the highest rate allowable by law; and (e) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

**COUNT V**
**(False Advertising)**
**(False Advertising Law, Business & Professions Code § 17500 *et seq.*)**

151.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

152.     Plaintiff brings this Count V individually and on behalf of the members of the California Subclass under California law.

153.     California's FAL (Bus. & Prof. Code § 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

154.    Throughout the Class Period, Coca-Cola committed acts of false advertising, as defined by §17500, by using false and misleading statements to promote the sale of Simply Orange, as described above.

155.    Coca-Cola knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

156.    Coca-Cola's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

157.    Plaintiff and California Subclass members suffered lost money or property as a result of Defendant's FAL violations because: (a) Plaintiff and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition, and (b) Plaintiff and the Class were induced to pay substantially more for Simply Orange than they would have paid if its true characteristics had not been concealed or misrepresented.

158.    Plaintiff brings this action pursuant to §17535 for injunctive relief to enjoin the practices described herein and to require Coca-Cola to issue corrective disclosures to consumers.

## COUNT VI
### (Violation of the Consumer Fraud Laws of the Various States)

159.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

160.    Plaintiff brings this Count VI individually and on behalf of the members of the Class.

161.    By mislabeling and selling Simply Orange as 100% pure and natural orange juice when in fact it is not, Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

162.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, et seq.

163.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, et seq.

164.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, et seq.

1    165.    Defendants have engaged in unfair competition or unfair or deceptive acts or

2    practices in violation of ARK. CODE ANN. § 4-88-107, et seq.

3    166.    Defendants have engaged in unfair competition or unfair or deceptive acts or

4    practices or has made false representations in violation of COLO. REV. STAT. § 6-1-101, et seq.

5    167.    Defendants have engaged in unfair competition or unfair or deceptive acts or

6    practices in violation of CONN. GEN. STAT. § 42-110b, et seq.

7    168.    Defendants have engaged in unfair competition or unfair or deceptive acts or

8    practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.

9    169.    Defendants have engaged in unfair competition or unfair or deceptive acts or

10   practices or made false representations in violation of D.C. CODE ANN. § 28-3901, et seq.

11   170.    Defendants have engaged in unfair competition or unfair or deceptive acts or

12   practices in violation of FLA. STAT. ANN. § 501.201, et seq.

13   171.    Defendants have engaged in unfair competition or unfair or deceptive acts or

14   practices in violation of GA. CODE ANN. §10-1-392, et seq.

15   172.    Defendants have engaged in unfair competition or unfair or deceptive acts or

16   practices in violation of HAW. REV. STAT. § 480, et seq.

17   173.    Defendants have engaged in unfair competition or unfair or deceptive acts or

18   practices in violation of IDAHO CODE § 48-601, et seq.

19   174.    Defendants have engaged in unfair competition or unfair or deceptive acts or

20   practices in violation of 815 ILL. COMP. STAT. 505/1, et seq.

21   175.    Defendants have engaged in unfair competition or unfair or deceptive acts or

22   practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.

23   176.    Defendants have engaged in unfair competition or unfair or deceptive acts or

24   practices in violation of IOWA CODE §714.16, et seq.

25   177.    Defendants have engaged in unfair competition or unfair or deceptive acts or

26   practices in violation of KAN. STAT. § 50-623, et seq.

27

28

1       178.    Defendants have engaged in unfair competition or unfair or deceptive acts or

2 practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.

3       179.    Defendants have engaged in unfair competition or unfair or deceptive acts or

4 practices in violation of LA. REV. STAT. § 51:1404, et seq.

5       180.    Defendants have engaged in unfair competition or unfair or deceptive acts or

6 practices in violation of ME. REV. STAT. tit. 5, § 205-A, et seq.

7       181.    Defendants have engaged in unfair competition or unfair or deceptive acts or

8 practices in violation of MD. CODE. ANN., COM. LAW § 13-101, et seq.

9       182.    Defendants have engaged in unfair competition or unfair or deceptive acts or

10 practices in violation MASS. GEN LAWS ch. 93A, §1, et seq.

11       183.    Defendants have engaged in unfair competition or unfair or deceptive acts or

12 practices in violation of MICH. COMP. LAWS § 445.901, et seq.

13       184.    Defendants have engaged in unfair competition or unfair or deceptive acts or

14 practices in violation of MINN. STAT. § 8.31, et seq.

15       185.    Defendants have engaged in unfair competition or unfair or deceptive acts or

16 practices in violation of MISS. CODE ANN. § 75-24-3, et seq.

17       186.    Defendants have engaged in unfair competition or unfair or deceptive acts or

18 practices in violation of MO. REV. STAT. § 407.010, et seq.

19       187.    Defendants have engaged in unfair competition or unfair or deceptive acts or

20 practices in violation of MONT. CODE ANN. § 30-14-101, et seq.

21       188.    Defendants have engaged in unfair competition or unfair or deceptive acts or

22 practices in violation of NEB. REV. STAT. § 59-1601, et seq.

23       189.    Defendants have engaged in unfair competition or unfair or deceptive acts or

24 practices in violation of NEV. REV. STAT. 598.0903, et seq.

25       190.    Defendants have engaged in unfair competition or unfair or deceptive acts or

26 practices in violation of N.H. REV. STAT. ANN. § 358-A:1, et seq.

27

28

191.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, et seq.

192.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, et seq.

193.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, et seq.

194.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, et seq.

195.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.

196.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, et seq.

197.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.

198.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, et seq.

199.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, et seq.

200.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, et seq.

201.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, et seq.

202.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, et seq.

203.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, et seq.

204.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, et seq.

205.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, et seq.

206.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, et seq.

207.    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, et seq.

208.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, et seq.

209.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, et seq.

210.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, et seq.

211.    The acts, practices, misrepresentations and omissions by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions, and Defendant violated each of these statutes by representing Simply Orange was 100% pure and natural when in fact it was not.

212.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition; and (b) Plaintiff and the Class were induced to pay substantially more for Simply Orange than they would have paid if its true characteristics had not been concealed or misrepresented.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

      a.    For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

      b.    For an order declaring that the Defendant's conduct violates the statutes referenced herein;

      c.    For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

      d.    For and order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

      e.    For prejudgment interest on all amounts awarded;

      f.    For an order of restitution and all other forms of equitable monetary relief;

      g.    For injunctive relief as pleaded or as the Court may deem proper;

      h.    For an order awarding Plaintiff and the Class and the California Subclass their reasonable attorneys' fees and expenses and costs of suit; and

      i.    For such other further relief the Court deems proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 19, 2012

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Sarah N. Westcot*
         Sarah N. Westcot

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       swestcot@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

1        I, Darrenn Gonzalez, declare as follows:

2        1.      I am a plaintiff in this action and a citizen of the State of California. I have personal

3  knowledge of the facts herein and, if called as a witness, I could and would testify competently

4  thereto.

5        2.      The Complaint filed in this action is filed in the proper place for trial under Civil

6  Code Section 1780(d) in that defendant The Coca-Cola Company does business in Solano County

7  and a substantial portion of the transaction complained of occurred in Solano County within the

8  Eastern District of California. I purchased Simply Orange brand orange juice at retail stores in

9  Vacaville, California in 2011 and 2012. I was not aware when I made the purchases that the juice

10  was heavily processed and flavored. The description of the juice as pure and natural on the label

11  was a substantial factor influencing my decision to purchase the juice. I would not have purchased

12  the juice if I had known that it was heavily processed and flavored and not made from natural

13  orange juice.

14        I declare under the penalty of perjury under the laws of the State of California that the

15  foregoing is true and correct, executed on March 19, 2012 at Vacaville, California.

18                                Darrenn Gonzalez

CLRA VENUE DECLARATION

# EXHIBIT A

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD
WALNUT CREEK, CA 94596
www.bursor.com

SARAH N. WESTCOT
TEL: 925.300.4455
FAX: 925.407.2700
swestcot@bursor.com

March 19, 2012

***Via Certified Mail – Return Receipt Requested***

The Coca-Cola Company
One Coca-Cola Plaza NW
Atlanta, Georgia 30313

Re:     *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The Coca-Cola Company ("Coca-Cola") pursuant to the provisions of California Civil Code § 1782, on behalf of our client, Darrenn Gonzalez, and all other persons similarly situated.

Coca-Cola has sold and continues to sell Simply Orange brand orange juice ("Simply Orange"), which is misrepresented as "100% Pure Squeezed Orange Juice" when it is actually heavily processed and flavored. The extensive processing Simply Orange undergoes changes the essential nature of the juice. It is not natural orange juice, but instead a product that is scientifically engineered in laboratories, which explains its shelf-life of more than two months. Some of the non-natural aspects of these processes include:

(a)     the removal of naturally present air from the intercellular spaces of the juice through the deareation process;

(b)     the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;

(c)     long term storage of dearated and pasteurized juices for a year or longer;

(d)     the addition of chemically engineered "flavor packs" to mimic the flavor that natural orange juice has, which because it is natural requires no flavor pack; and

(e)     the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up the varietal and geographic differences.

Coca-Cola has engaged in a uniform marketing and advertising program representing that Simply Orange is 100% pure and natural and made from fresh oranges to induce consumers to purchase Simply Orange in reliance upon these representations. These representations were prominently displayed on Simply Orange labels, and within Simply Orange advertisements, promotional materials and website. Coca-Cola has and continues to

mislead consumers to believe that Simply Orange juice was high quality and 100% pure and natural to command a premium price for their juice, take away market share from its competitors and increase its own profits.

Darrenn Gonzalez is a citizen of the State of California and is a consumer as defined in California Civil Code §1761(d) in that he purchased Simply Orange "for personal, family or household purposes."  Mr. Gonzalez purchased Simply Orange, which was represented as being 100% pure and natural from retail stores in California.  He saw and read Coca-Cola's misrepresentations that its Simply Orange juice is pure and natural and relied on such misrepresentations in deciding to purchase Simply Orange.

If the truth about Simply Orange's actual composition had been known, Mr. Gonzalez would not have purchased it.  Mr. Gonzalez suffered a loss of money as a result of Coca-Cola's misrepresentation in the amount of the purchase price of Simply Orange.

By misrepresenting and mislabeling the content of Simply Orange, Coca-Cola has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).

We hereby demand that Coca-Cola immediately (1) cease and desist from further sales of the misrepresented Simply Orange juice, (2) issue an immediate recall of Simply Orange; and (3) make full restitution to all purchasers of Simply Orange of all money obtained from sales thereof.

It is further demanded that Coca-Cola preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents concerning product development and production of Simply Orange;

2.  All communications with the U.S. Department of Agriculture, Food and Drug Administration, and the U.S. Environmental Protection Agency concerning the product development, manufacturing, marketing and sales of Simply Orange;

3.  All documents concerning the advertisement, marketing or sale of Simply Orange; and

4.  All communications with customers concerning complaints or comments concerning Simply Orange.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with Coca-Cola to attempt to resolve the demands asserted in this letter.  If Coca-Cola wishes to enter into such discussions, please contact me immediately.

If Coca-Cola contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

Sarah N. Westcot